EDWARD D. SOHIER & another *vs.* THOMAS LAMB & others.

Suffolk. March 11, 1881; Jan. 26. — Feb. 5, 1883. W. ALLEN, J., absent.
HOLMES, J., did not sit.

A corporation conveyed all its property to trustees to secure the payment of certain bonds issued by it and payable to bearer. One of the bonds, duly executed, and payable in five years, with interest coupons attached, was lost before issue. Receivers of the corporation were subsequently appointed by this court, with power to collect the assets of the corporation, pay the debts, and divide the balance among the stockholders. The trustees, at the request of the receivers, released to the receivers the property held in trust, and accepted from the receivers a sum of money as security for the lost bond, until such time as the lost bond and coupons should be paid, or the rights of any holder thereof be extinguished. The receivers paid all the debts of the corporation and the bonds which had been issued. Nine years after these bonds were paid, the lost bond not having been presented for payment, the receivers, being ready to close their trust, brought a bill in equity against the trustees to compel a transfer of the sum of money deposited as security for the lost bond, but did not offer to give security which might avail the bondholder if one should appear. The court ordered notice by publication to any one having an interest in the bond, which order was complied with, and no such person appeared. *Held,* that the bill could not be maintained.

BILL IN EQUITY, filed January 4, 1879, alleging that the plaintiffs were, on March 10, 1870, appointed, by an order of this court, receivers of the East Boston Ferry Company, a corporation duly established according to law, with full power to collect, demand and receive the outstanding debts due the corporation, and all the assets and property thereof, to pay and discharge its debts and liabilities and to pay the balance to the stockholders of the corporation, and to take all proper measures at law and in equity to collect and recover all such property and assets; that the receivers had entered upon their duties, collected claims due the corporation, discharged all its debts and obligations, and paid dividends to the stockholders to an amount stated.

The bill further alleged that the plaintiffs had collected all the assets of the corporation, and had wound up all its affairs, except one claim which would soon be disposed of; that they were desirous of finishing their duties as receivers, and of being discharged by the court.

The bill further alleged, that on July 16, 1866, the corporation had conveyed all of its property to certain persons, of whom the defendants are the successors, in trust, to secure certain

bonds, which the corporation had authorized to be issued to the amount of $100,000, payable in five years from July 16, 1866; that said bonds were prepared and signed; that one of them to the amount of $5000 with coupons attached for interest at the rate of six per cent per annum, payable semiannually, was never issued nor negotiated, but was lost in some unknown manner, about October 13, 1866, and had never since been seen or heard from, and no payment of the principal or any part of the interest demanded of the corporation, the receivers or the trustees; that the remaining bonds, amounting to $95,000, were issued, and were paid in full on April 1, 1870; that all the provisions of the trust were complied with, except so far as there might be a liability to pay the principal and interest of the lost bond to any *bona fide* holder for value; that the trustees, at the request of the plaintiffs, released to the corporation the property conveyed in trust, and accepted from the plaintiffs the sum of $6500, to be held by the trustees, as substituted security, upon the same trusts as those upon which the trustees held the property previously conveyed to them, as far as applicable, and until such time as such bond and coupons were paid, or the right of any holders thereof, if any there were, was extinguished; that said sum of $6500 and the interest accrued thereon had ever since been held as security for the payment of said lost bond and coupons.

The prayer of the bill was that the defendants be compelled to pay to the plaintiffs said sum of $6500 and interest thereon; and for further relief.

On the filing of the bill, an order of notice was issued, by publication in two newspapers, which recited the facts set forth in the bill, and all persons interested, and especially those claiming any interest in the lost bond, were ordered to appear on a day named.

The trustees alone appeared, and filed answers, admitting the facts alleged in the bill to be true.

At the hearing, before a single justice, a decree was ordered for the plaintiffs, in accordance with the prayer of the bill; and the defendants appealed to the full court.

The case was argued, in March 1881, by *C. A. Welch*, for the plaintiffs, and by *O. W. Holmes, Jr.*, for the defendants; and

was reargued, in January 1883, by *Welch*, for the plaintiffs, and by *G. O. Shattuck & W. A. Munroe*, for the defendants.

The plaintiffs' counsel, to the point that the bond never had any valid existence, because it was never issued, cited *Baxendale* v. *Bennett*, 3 Q. B. D. 525; *Burson* v. *Huntington*, 21 Mich. 415; *Chipman* v. *Tucker*, 38 Wis. 43; *Roberts* v. *McGrath*, 38 Wis. 52; *Roberts* v. *Wood*, 38 Wis. 60.

The defendants' counsel, to the point that, if the bond was lost before issued, it would be held to be a binding obligation in the hands of a *bona fide* holder for value, cited *Worcester County Bank* v. *Dorchester Bank*, 10 Cush. 488; *Ingham* v. *Primrose*, 7 C. B. (N. S.) 82, 85; *Swan* v. *North British Australasian Co.* 2 H. & C. 175; *Gould* v. *Segee*, 5 Duer, 260, 270; *Shipley* v. *Carroll*, 45 Ill. 285; *Clarke* v. *Johnson*, 54 Ill. 296; *Briggs* v. *Ewart*, 51 Mo. 245, 249; *Kinyon* v. *Wohlford*, 17 Minn. 239; *Spitler* v. *James*, 32 Ind. 202.

FIELD, J. The money now in the hands of the trustees is held, as the bill alleges, "as security for the payment of said lost bond and coupons," and was accepted from the receivers to be held by the trustees, as substituted security, upon the same terms as those upon which the trustees held the property previously conveyed to them, as far as applicable, and until such time as such bond or coupons were paid, or the right of any holders thereof, if any there were, was extinguished.

This bond was lost on or about October 13, 1866. Before it was lost, it had been duly executed and prepared ready to be issued, but, it is said, had not been issued. It was for the sum of $5000, payable in five years from July 16, 1866, with interest at the rate of six per cent per annum, payable semiannually, according to the tenor of interest coupons attached. The tenor of the bond nowhere appears in the papers, but it is assumed that it was payable to bearer, and was an instrument negotiable by delivery. As the creditors of the East Boston Ferry Company have all been paid, the money, if received by the plaintiffs, will be distributed among the stockholders of that company.

In 1870, all the bonds actually issued were paid, and the property originally conveyed to the trustees as security for the payment of these bonds was by them conveyed back to the corporation. This was done at the request of the receivers; and,

to obtain this reconveyance from the trustees, the receivers were compelled to place in their hands this sum of $6500, to be held as security for the payment of this lost bond and its coupons. No one has appeared as the holder of the lost bond, or of any of its coupons, and no one who is a party to this suit has any knowledge or information that the bond or any of its coupons is in existence. All these facts were known to the receivers at the time they placed this money in the hands of the trustees. At the time the bill was filed, about nine years had elapsed from the time of the deposit of the money with the trustees, and meanwhile the principal sum of the bond had become due; but in no other respect had the legal status changed.

There is perhaps a greater probability now that the bond and its coupons have ceased to exist, or have never been, in a legal sense, held by any person, than there was nine years ago, but the law raises no presumption from the facts proved.

It is contended in argument that, as this bond was never issued, it is impossible that it can be an outstanding obligation in the hands of any person. But, if this were the law of this Commonwealth, it has never been determined, as against the holder of this bond or its coupons, if there be any, that this bond was never issued by the corporation, although, as publication of this bill has been made, and no person has appeared, claiming as holder of the bond, or claiming any interest in the trust fund, any decree made in the cause might protect the trustees. But it is, to say the least, doubtful if such is the law of this Commonwealth. See *Worcester County Bank* v. *Dorchester Bank*, 10 Cush. 488; *Wyer* v. *Dorchester Bank*, 11 Cush. 51. Besides, it was as security against the possibility of just this liability, under all the facts then known to these receivers, that this money was deposited with these trustees.

It is also contended that a court of equity, in the exercise of its power of winding up a corporation and of distributing its property among those entitled to it, may take this money and distribute it, and leave the bondholder, if there be one, to recover the value of his debt of the stockholders among whom the property is distributed. It does not distinctly appear by the pleadings that the East Boston Ferry Company has been dissolved, pursuant to the Gen. Sts. *c.* 68, § 35; but, even if it

has been, this is not an application to have a time fixed within which creditors of the corporation may prove their claims, pursuant to the Gen. Sts. *c.* 68, § 39, with the view of distributing the " balance remaining " among the stockholders; and it is unnecessary to consider whether a general creditor of a dissolved corporation, who has not proved his claim within the time fixed by the order of the court, can, after the " balance remaining " has been distributed by the receivers among the stockholders, have any remedy against the stockholders.

This is in effect a suit for the purpose of declaring a trust created by the plaintiffs terminated, and of ordering the funds in the hands of the trustees paid to the plaintiffs, on the ground that there is no reason why the trust should longer continue, and it is instituted by the plaintiffs under the power contained in the order appointing them receivers and authorizing them to collect and recover the property of the corporation. It is the specific equitable lien on the trust fund which a bondholder may have which the plaintiffs ask may be dissolved, that they may obtain the money and distribute it among the stockholders of the corporation. The trust has not, according to its terms, expired, whether the money be regarded as substituted for the original trust property, or held on a distinct trust. The bill alleges that the money was to be held by the trustees until such time as such bond and coupons were paid, or the right of any holder thereof, if any there were, was extinguished. The court, as a court of equity, has jurisdiction to enforce and regulate the execution of trusts ; and, in the absence of any statute directly applicable to such a case as this, it may be that the court can, after giving such notice as it deems sufficient, proceed to inquire whether there is any person beneficially interested in the trust, and may determine this question, and, if it determines that there is none, may declare the trust terminated, and direct the trust funds to be transferred to the persons entitled to them; and that such a decree would protect the trustees against any personal liability for acts done in compliance with its terms. Assuming this to be so, yet as the plaintiffs do not offer to give any security that may avail the bondholder, if any shall appear hereafter, and as the corporation has probably been dissolved, we think, on the facts of this case, that no decree compelling the

trustees to pay this fund to the plaintiffs ought, without requiring such security, to be made within the period of the limitation of actions on contracts such as this bond. Without deciding that the statute of limitations of its own force would be a bar to a suit by the bondholder against the trustees to enforce the trust; *Farnam* v. *Brooks*, 9 Pick. 212; *Hemenway* v. *Gates*, 5 Pick. 321; yet, after the lapse of twenty years from the maturity of the bond, the court would not, without special cause, entertain a bill brought for that purpose, and might well act in the distribution of the fund upon the presumption that the liability, if any ever existed, had become extinguished.

*Bill dismissed.*